DARRELL L. REED, Airman Basic, U. S. Air Force, Petitioner

v

NILS O. OHMAN, Major General, Commander,
Headquarters Command, U. S. Air Force;

RICHARD A. KNOBLOCH, Brigadier General, Commander,
1st Composite Wing, Andrews Air Force Base,
Washington, D. C.;

GEORGE W. STALNAKER, Colonel, Commander, 1st Composite
Support Group, Base Commander, Andrews Air Force
Base, Washington, D. C.;

DANIEL F. GILBERT, Lieutenant Colonel, Commander,
1001st Transportation Squadron, Andrews Air Force
Base, Washington, D. C.;

and

WILLIAM C. GRIBBLE, JR., Major General, Commander,
Fort Belvoir, Virginia, Respondents

19 USCMA 110, 41 CMR 110

Miscellaneous Docket No. 69–27

December 12, 1969

*Captain Charles T. C. Compton* argued the cause for Petitioner.

*Major Robert L. Bates* argued the cause for Respondents. With him on the brief were *Colonel James M. Bumgarner* and *Lieutenant Colonel Robert W. Vayda.*

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial, convened at Andrews Air Force Base, convicted the petitioner of several offenses in violation of the Uniform Code of Military Justice, and he now seeks release from confinement pending appellate review of the conviction or, alternatively, to prevent his transfer from the Fort Belvoir Center Confinement Facility, where he is presently confined, to the United States Disciplinary Barracks, Fort Leavenworth, Kansas.

Restraint on personal liberty pending appellate review of a court-martial conviction is authorized by ▇ military law. Article 13, Uniform Code of Military Justice, 10 USC § 813; Manual for Courts-Martial, United States, 1951, paragraph 21*d*; repromulgated without change, Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 21*d*; United States v Howard, 2 USCMA 519, 10 CMR 17. The validity of the rule has recently been challenged in Federal civilian courts, but it has been sustained. Noyd v

112

Bond, 285 F Supp 785, 787 (D New Mexico) (1968), reversed on other grounds, 402 F2d 441 (CA10th Cir) (1968), affirmed, 395 US 683, 23 L Ed 2d 631, 89 S Ct 1876 (1969); Levy v Dillon, 286 F Supp 593 (D Kansas) (1968). We considered the matter at length in Levy v Resor, 17 USCMA 135, 37 CMR 399. There, a petition for extraordinary relief alleged, in part, that the petitioner's detention in a hospital room under guard pending appellate review was illegal. We pointed out that the Constitution did not prohibit post-conviction confinement and that the right to freedom from restraint depended upon statute. See also United States v Petroff-Tachomakoff, 5 USCMA 824, 19 CMR 120.

Article 13, Code, supra, provides that an accused may be held for "the result of trial." This provision applies to post-conviction restraint. United States v Teague, 3 USCMA 317, 324, 12 CMR 73. The statutory authorization is amplified by provisions in the Manual for Courts-Martial, which deal with two separate points of time. The first period is the end of the trial. Trial counsel must notify the commanding officer of the results of trial and the commanding officer is, thereupon, required to "take prompt and appropriate action with respect to the restraint" of the accused pending final disposition of his case. Manual for Courts-Martial, United States, 1951, paragraph 21d, reaffirmed in Manual for Courts-Martial, United States, 1969, paragraph 21d. The second time of decision is by the convening authority when he acts on the record of trial. Manual, paragraph 89c(6).[1] In Levy v Resor, supra, we held that these provisions conferred discretionary authority upon the commander and convening authority to restrain an accused pending appellate review of his conviction or to allow the accused to remain at unrestricted liberty. In our opinion we commented on, but did not determine, the nature of the proceedings and whether the Government had the burden of establishing the necessity for restraint or the accused had the burden of presenting justification for freedom. Those issues are raised in the petition in this case.

As noted, paragraph 21d. of the Manual provides that, upon notification by trial counsel of the results of trial, a commanding officer will take "prompt and appropriate action" in regard to restraint of the accused. The commander may release the accused from preexisting restraint, continue preexisting restraint, or determine that some kind of restraint not already in effect is "necessary." Obviously, if the accused was confined during trial and was acquitted by the court-martial or not sentenced to confinement or a discharge he must be released, provided he is not facing other charges. Manual, supra, 1951, paragraphs 21d, 44e(2). However, if the accused was under limited or no restraint before conviction and sentence by the court-martial, the fact of conviction raises questions as to the appropriateness of increased limitation on his personal freedom pending final approval of the findings of guilty and sentence. The case may be one which can be acted upon finally by the convening authority, who may order the sentence into immediate execution, or it may be one in which the sentence will probably not be final until reviewed by this Court. See Code, supra, Articles 65, 67, 71, 10 USC §§ 865, 867, 871, respectively. In either case, a period of time will necessarily elapse between the imposition of sentence by the court-martial and the order of execution. During that period of time some kind of reasonable restraint upon the accused may be "necessary." Manual, supra, 1951, paragraph 21d. A decision to impose restraint during this period is, as we pointed out, legal.

[1] In a particular case, the commanding officer whom trial counsel notifies of the results of trial may not be the convening authority. United States v Teague, 3 USCMA 317, 12 CMR 73. We need not consider the effect of a difference of opinion between them.

By what process and upon what basis is the decision made?

Putting aside for the moment provisions of the Military Justice Act of 1968, the Uniform Code and the Manual for Courts-Martial provide no explicit procedure by which to determine the need for post-conviction restraint. Trial counsel is required to notify the commanding officer of the results of trial, but there is no indication that he may recommend freedom or restraint, including a particular kind of restraint. Under the 1951 Manual, trial counsel was authorized to make recommendations as to restraint during trial, but this provision was deleted in the 1969 Manual. Compare Manual, supra, 1951, paragraph 60, with Manual, supra, 1969, paragraph 60. Since the question is one in which the Government has substantial interest, we suppose it can present its views through trial counsel, without specific authorization by the Manual. Similarly, it does not appear from any Code or Manual provision that trial counsel can recommend restraint to the convening authority in connection with his action on the case. Manual, supra, 1951, paragraph 89c(6).

The Manual for Courts-Martial is also silent as to the accused's right to present to the commanding officer or to the convening authority matters to support an assertion of the appropriateness of no restraint or limited restraint pending appellate review of his conviction. Article 38(c), Code, supra, 10 USC § 838, authorizes the accused's counsel to file a brief for attachment to the record of trial of "such matters as he feels should be considered in behalf of the accused on review." The Manual enumerates several kinds of matters that can be raised by defense counsel; none includes submission of material relevant to post-trial restraint. Manual, supra, 1969, paragraph 48k. Nevertheless, under the broad language of Article 38, it would appear permissible for counsel to present matters on that issue. Moreover, since the accused's

freedom is involved, it would appear that, regardless of specific statutory authority, he should have the opportunity to submit matter favorable to himself or to oppose unfavorable material before the decision-making authority, including the probability of reversal or substantial modification of the conviction. See United States v Noyd, 18 USCMA 483, 494, 40 CMR 195.

Earlier, we noted that the Manual for Courts-Martial commands a decision as to restraint pending review both immediately after sentence by the court-martial and at the time of action by the convening authority. There is no indication as to whether the Government or the accused has the burden of persuasion. Apparently, the Manual contemplates a decision uninfluenced by such adversarial concepts as the burden of proof or the burden of going forward with the proof. In other words, a decision is required whether or not the parties have presented matter on the question of restraint. The commanding officer is advised by the Manual that on receipt of notification of the results of trial he "will take" prompt action with respect to "restraint of the person tried." (Emphasis supplied.) Manual, supra, 1951, paragraph 21d. Similarly, the convening authority is informed that when he acts on a case requiring further review he "will . . . provide in his action for the temporary custody of the accused pending final disposition of the case upon appellate review." (Emphasis supplied.) Id., paragraph 89c(6). On what information will the commander or the convening authority act?

Manual provisions contemplate different sources of information for each decision. At the end of trial, the commanding officer need only be notified of the results of trial. Presumably, therefore, his decision will be predicated upon the nature and number of the offenses of which the accused stands convicted. That information

will normally indicate whether restraint is "necessary." Manual, supra, 1951, paragraph 21*d*. As for the decision by the convening authority, he will have had the full record of the proceedings against the accused and apparently his decision is intended to take into account all the circumstances relevant to the issue disclosed therein; but he, too, must decide whether imposition of restraint is "necessary for the administration of military justice." Manual, supra, 1969, paragraph 20*d*(1). In Levy v Resor, supra, at page 140, we pointed out that in the absence of other evidence the "character and extent of a series of offenses" may properly be considered in determining whether post-conviction restraint is appropriate. See also United States v Howard, 2 USCMA 519, 520, 10 CMR 17. In either case, the decision to restrain is reviewable for abuse of discretion. Levy v Resor, supra; United States v Howard, supra.

This petitioner was convicted of unauthorized absence and escape from confinement. The Government ■ has informed us that since his confinement the petitioner has twice attempted to escape. The petitioner acknowledges two incidents in which he attempted to climb a fence in the confinement facility, but he contends neither incident constituted a "serious attempt" to escape. Serious or minor, these events lend support to the original assessment for the necessity of post-conviction restraint. United States v Teague, supra, at page 324. We conclude, therefore, that on the record before us there was no abuse of discretion in the decision to impose post-trial restraint upon the petitioner. Levy v Resor, supra; United States v Howard, supra.

Imposition of post-conviction restraint, even to the extent of confinement, is not execution of the sentence of the court-martial; rather it is, as we have seen, necessary to the administration of justice. Such ■ restraint does not violate the prohibition against execution of the sentence contained in Article 71 of the Uniform Code. United States v Teague, supra. Neither does post-conviction restraint affect the sentence imposed by the court-martial.

Article 57, Code, supra, 10 USC § 857, provides that a period of confinement included in a sentence ■ tence begins to run from the date of imposition of sentence by the court-martial. That provision is in effect whether or not the accused is at liberty after sentence by the court-martial or is placed under some form of restraint. United States v Bayhand, 6 USCMA 762, 766–767, 21 CMR 84; United States v Teague, supra. In other words, temporary confinement pending appellate review is not service of the sentence. United States v Petroff-Tachomakoff, supra. Presently we will consider the permissible conditions of such confinement, but here it is sufficient to note that confinement to await review does not make the accused a sentenced prisoner. United States v Teague, supra, at page 324.

To this point we have not considered the effect of the Military Justice Act of 1968. Public Law 90–632, 90th Congress, 2d Session, 82 Stat 1335. The Act provides that, on application of the accused, the convening authority, or the officer exercising general court-martial jurisdiction over an accused no longer within the convening authority's jurisdiction, may "defer service of the sentence to confinement" during the period between imposition of sentence by the court-martial and the order of execution of sentence after completion of appellate review. Article 57(d), Code, supra, 10 USC § 857.[2] This is the period of

---

[2] Article 57(d), Uniform Code of Military Justice, 10 USC § 857, reads as follows:

"On application by an accused who is under sentence to confinement that has not been ordered executed, the convening authority or, if the accused is no longer under his jurisdiction, the officer exercising general court-martial jurisdic-

the two decisions as to restraint which were discussed above. Petitioner's counsel contends that this provision demonstrates Congress intended to treat confinement pending appellate review, as distinguished from other forms of restraint, as service of the sentence, which they view as "penal" in nature and, therefore, prohibited by Article 71 of the Code.

The deferment provision was intended by Congress as a system of release from post-trial confinement "similar to release on bail" by the civilian courts pending appeal of a conviction. Senate Report No. 1601, to accompany H. R. 15971, 90th Congress, 2d Session, 3 United States Code Congressional and Administrative News, pages 4501, 4503, 4513–4514 (1968). Considering that the Manual contemplates post-trial restraint when "necessary," it may be that the new provision for deferment confers no significant additional advantage to an accused awaiting appellate review of his conviction. Yet the draftsmen of the provision indicate in their report a purpose to provide a more regularized procedure than the one left largely to inference in the Manual for Courts-Martial and a more flexible standard for excluding confinement as an appropriate restraint pending appeal. For present purposes, we need not determine the precise meaning of the phrase "defer service of the sentence to confinement" as used in subdivision (d) of Article 57.[3] We perceive nothing in either the language of the Article or the legislative background of the deferment provision to indicate an intention by Congress to change the established rule that, while sentence to confinement such as that imposed upon petitioner cannot be ordered into execution until completion of appellate review as provided by Article 71, temporary restraint pending appellate review is lawful. We conclude, therefore, that the petition discloses no ground to direct release of petitioner from all confinement pending appellate review of his conviction.

We turn now to the petitioner's contention that it is unlawful to transfer him from the confinement facility at Fort Belvoir, Virginia, to the United States Disciplinary Barracks, Fort Leavenworth, Kansas.

Even in confinement, an accused whose conviction is not final cannot be treated as a sentenced prisoner. However, no provision of the Code or the Manual prohibits transfer from one confinement facility to another, as may be deemed necessary or appropriate. To the contrary, the Manual plainly contemplates changes in the "place of temporary custody or con-

---

tion over the command to which the accused is currently assigned, may in his sole discretion defer service of the sentence to confinement. The deferment shall terminate when the sentence is ordered executed. The deferment may be rescinded at any time by the officer who granted it or, if the accused is no longer under his jurisdiction, by the officer exercising general court-martial jurisdiction over the command to which the accused is currently assigned."

[3] The military and civilian systems are different as to when the accused is credited with confinement time. In the military, he is credited with confinement time from the date sentence is imposed by court-martial, whether or not he is placed in actual confinement after trial; in the civilian community, there is no credit for confinement until and unless the defendant actually enters upon service of his sentence. Thus, as to a civilian defendant, time on bail is not time credited toward confinement; but, as noted in the text, a military accused at liberty after sentence is still credited with confinement time. See Noyd v Bond, 395 US 683, 23 L Ed 2d 631, 89 S Ct 1876, 1881–1882 (1969). As a result, the mere lapse of time between imposition of sentence and the order of execution may loosely be described as "service of the confinement." See United States v Nelson, 18 USCMA 177, 181, 39 CMR 177; United States v Robbins, 18 USCMA 86, 90, 39 CMR 86. Cf. 18 USC § 3568 and Rule 38 (a)(2), Federal Rules of Criminal Procedure.

finement" during appellate review of a conviction. Manual, supra, 1969, paragraph 89c(6). Transfer from one kind of institution to another which is significantly different in nature may raise questions of constitutional import. Matthews v Hardy, — F2d — (CA DC Cir) (1969); see also Schuster v Herold, 410 F2d 1071 (CA 2d Cir) (1969). In Noyd v Bond, supra, the United States District Court held that it was unlawful to transfer the accused during appellate review of his conviction from a base facility to the United States Disciplinary Barracks at Fort Leavenworth. The court indicated that, in its opinion, confinement in the Disciplinary Barracks would constitute execution of the confinement portion of the accused's sentence in violation of Article 71. No reasons were offered to support the conclusion. In Levy v Dillon, supra, the District Court reached an opposite conclusion.

The petitioner has analyzed restrictions on personal freedom applicable to all prisoners in the Dis- ██ciplinary Barracks, such as a prohibition against singing and limitations on use of a typewriter, and argues that these are "penal" in nature. We have already noted that an accused confined to await final review of his sentence cannot be subjected to punishment or penalty in execution of the sentence. Lowe v Laird, 18 USCMA 131, 39 CMR 131; see also United States v Nelson, 18 USCMA 177, 39 CMR 177. However, he is subject to the ordinary conditions of life in confinement which necessarily involve some curtailments of personal freedom. Nothing in the petition indicates that the established regime of the Disciplinary Barracks will result in unlawful conditions of confinement for the petitioner. It does not, therefore, justify judicial interference with current efforts to maintain restraint over the accused. Levy v Resor, supra; Levy v Dillon, supra. A Department of Defense instruction applicable to all military confinement facilities specifically recognizes differences in the kinds of restriction that can be imposed during confinement upon unsentenced prisoners and sentenced prisoners. Department of Defense Instruction 1325.4, October 7, 1968, paragraph III. A. 2. b.; see also paragraph III. J. 2. There is no intimation anywhere in the petition that the confinement officials at the Disciplinary Barracks propose to violate the instruction and subject the petitioner to conditions more onerous than those of an unsentenced prisoner.

The petition is denied.

Judge FERGUSON concurs.

DARDEN, Judge (concurring):

I consider nothing in the principal opinion as being determinative of whether a convening authority's decision on an application for deferment of sentence to confinement under Article 57(d), Uniform Code of Military Justice, 10 USC § 857, is subject to judicial review. I therefore concur.